UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT THOMPSON,

                     Petitioner,

       - *against* -

RAYMOND CUNNINGHAM, Superintendent,
Woodbourne Correctional Facility,

                     Respondent.

08 Civ. 10458 (VB)(LMS)

**REPORT AND
RECOMMENDATION**

TO: THE HONORABLE VINCENT BRICCETTI, U.S.D.J.[1]

      Petitioner Robert Thompson, now proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his state court conviction for the crime of grand larceny in the first degree. Pet. 4, D.E. 1. After a jury convicted him of this offense, on June 8, 2004, Petitioner was sentenced to an indeterminate term of imprisonment of eight and one-third to twenty-five years and ordered to pay restitution in the amount of $1,350,400 to the victim of his theft, Quetita Glassman. Sentencing Hrg. Tr. June 8, 2004 (herein, "S2") at 30 - 31.

      On October 8, 2008, Petitioner signed the instant Petition, Pet. 24, and it was received by the Clerk's Office on December 3, 2008.[2] D.E. 1. Petitioner, who was proceeding pro se at the

---

     [1]This Petition was referred to me by Judge Karas, to whom the matter was originally assigned, on December 9, 2008. Order of Reference, Docket Entry (herein, "D.E.") 4.

     [2]Ordinarily, a petition filed by an incarcerated pro se petitioner is considered to have been filed on the date the petitioner submits the petition to prison authorities for mailing. See Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001). Petitioner does not provide this date with his

time of filing, raises the following claims:

(1) the trial court erred in declining to rule on the merits of Petitioner's statute of limitations defense, Pet. 2;

(2) Petitioner's conviction was in fact barred by the applicable statute of limitations, id.;

(3) the trial court violated Petitioner's Sixth Amendment Confrontation Clause rights by admitting the victim's conditional examination testimony instead of requiring her in-court testimony at trial, see id. at 2, 9 - 11;

(4) the trial court erred in rejecting Petitioner's challenge under Batson v. Kentucky, 476 U.S. 79 (1986), during jury selection, Pet. 2;

(5) Petitioner's voir dire of potential jurors was "impermissibly curtailed" by the trial court's jury selection practices, Pet. 2, 11;

(6) Petitioner's right to a fair trial was violated by the prosecutor's inflammatory summation, Pet. 2;

(7) "the trial court's verdict sheet impermissibly shifted the burden of proof to the Petitioner," id.;

(8) "the jury's verdict was against the weight of the evidence," id.;

(9) Petitioner's counsel at trial was ineffective, id.;

(10) Petitioner's counsel at sentencing was ineffective, id.

For the reasons set forth below, I conclude, and respectfully recommend that Your Honor

---

Petition, only the date on which he signed his Petition, October 8, 2008.  It seems unlikely, given the length of time between this date and the date on which the Clerk's Office received the Petition, December 3, 2008, that Petitioner in fact submitted the Petition to prison authorities for mailing on October 8, 2008.  However, even if the Petition was in fact give to prison authorities for mailing closer to December 3, the Petition is still timely, so the precise date of filing is irrelevant.

should conclude, that this Petition should be dismissed.

## I. BACKGROUND

### A.     The Crime

From 1982 to 2002, Petitioner stole over $1.3 million from Quetita Glassman, an elderly former businesswoman he had known for some time, by repeatedly convincing her to give him money to "invest" on her behalf.  Conditional Examination Tr. Sept. 30, 2003 (herein, "CE1") 12: 14 - 17; 16: 21 - 17: 23.  Although Petitioner told Glassman that he was investing her money in "gold coins, into diamonds, into [b]earer bonds, [and] into banks," CE1: 17, and that her investments with him had grown to over $4 million, id., she received nothing in return.  CE1: 34. Instead, Petitioner spent Glassman's savings on his own personal expenses, including travel and cash withdrawals made at various casinos.  Trial Tr. (herein, "T") 563, 577.  The scheme only came to an end when Glassman's family discovered her savings were gone in or around 2002 and contacted law enforcement.  Conditional Examination Tr. October 8, 2003 (herein, "CE4") 57 - 58; T: 390 - 91.  She was then approximately ninety-five years old.  CE1: 9.

### B.     Procedural History

Respondent affirms that on June 5, 2003, Petitioner was indicted for one count of grand larceny in the first degree and one count of grand larceny in the second degree.  Resp't's Aff. in Opp'n 2; but see Resp't's Mem. 23 (implying that in fact Petitioner was indicted on June 10 of that year).

Respondent affirms that, on June 27, 2003,[3] Westchester County Court Judge Kenneth

---

[3]In fact, Respondent gives this date as "June 27, 2007," see Resp't's Aff. in Opp'n 2, but as the conditional examination itself began in September 2003, and the motion to take the examination was also decided in 2003, see CE1, I infer that 2007 is merely a typographical error.

3

Lange granted the People's motion to take Glassman's testimony by conditional examination, pursuant to New York Crim. Proc. Law §§ 660.10 et seq.[4]  Resp't's Aff. in Opp'n 2.  This examination took place on September 30, October 1, October 7, and October 8, 2003.  See CE1, Conditional Examination Tr. October 1, 2003 (herein, "CE2"), Conditional Examination Tr. October 7, 2003 (herein, "CE3"), and CE4.  Glassman's direct testimony took place on the first two days, and Petitioner's cross examination took place on the latter two.

On March 29, 2004, Westchester County Court Judge Barbara Zambelli conducted a pre-trial hearing to determine whether Glassman, then ninety-six, was indeed unavailable to testify and whether her conditional examination testimony should therefore be admitted instead.  T: 1 - 25.  After hearing the testimony of Glassman's physician, who described how Glassman's health had declined severely over the six months since the conditional examination, the Court concluded that Glassman was physically unable to testify, and admitted her conditional examination testimony.  Id.

From March 31 to April 8, 2004, a jury trial was held in Petitioner's case.  T: 34, 774.  On April 8, the jury returned a guilty verdict on the charge of grand larceny in the first degree.  T: 875 - 76.  On May 25, Petitioner came before Judge Zambelli for sentencing, represented by a

--------------------------------------------

[4]A conditional examination of a witness in a criminal proceeding may be taken where there is reasonable cause to believe that the witness possesses material information and will not be available to testify at trial, either due to absence from the state or ill health.  N.Y. Crim.Proc.Law § 660.20.  The conditional examination must be recorded in the same way as the witness's trial testimony would be, and may be videotaped as well.  N.Y. Crim.Proc.Law § 660.50(3).  The process is designed to mimic trial testimony as closely as possible: the witness testifies under oath, the defendant has the right to cross-examine the witness, and parties may object and receive evidentiary rulings from the court.  N.Y. Crim.Proc.Law § 660.60(1).  If the witness does become unavailable at the time of trial due to absence from the state, illness, or death, the conditional examination transcript and any videotape may be admitted.  N.Y. Crim.Proc.Law § 670.10.

new attorney, Randy Steinhauser.  Sentencing Hrg. Tr. (herein, "S1") May 25, 2004, 1 - 3.  Upon

Petitioner's request, the Court adjourned sentencing to June 8, 2004, to give Petitioner's new

attorney a chance to familiarize himself with the case.  S1: 4.  On June 8, 2004, Steinhauser

sought another adjournment of the sentencing, as he had yet to receive the case file from

Petitioner's trial attorney.  S2: 2 - 3.  The Court rejected this application.  Id. at 3.  Petitioner was

then sentenced to an indeterminate term of imprisonment of eight and one-third to twenty-five

years, and to pay restitution in the amount of $1,350,400.  S2: 30 - 31.

Petitioner timely appealed his conviction.  Pet. App. 1 - App. 66.  On appeal, Petitioner

raised essentially the same claims he makes in this Petition, as will be described more fully

herein, as well as an additional claim that his sentence was excessive.  See id.  The Appellate

Division, Second Judicial Department, affirmed Petitioner's conviction.  People v. Thompson, 45

A.D.3d 876 (2d Dept. 2007).  Petitioner sought leave to appeal this decision to the New York

Court of Appeals, Pet. App. 69 - App. 72, but that Court denied leave on February 26, 2008.

People v. Thompson, 10 N.Y.3d 772 (2008).

Petitioner timely filed the instant Petition sometime between October 8, 2008, and

December 3, 2008.  See supra, n. 2.

## II. DISCUSSION

### A.    Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may

5

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, "'[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731

(1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190 - 91 (2d

Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28

U.S.C. § 2254(b), (c):

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that--
>> (A) the applicant has exhausted the remedies available in the courts of the State;
>> or
>> (B)(i) there is an absence of available State corrective process; or
>>   (ii) circumstances exist that render such process ineffective to protect the
>> rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in
> the courts of the State, within the meaning of this section, if he [or she] has the
> right under the law of the State to raise, by any available procedure, the question
> presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion

doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the

petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate

state courts.  Picard, 404 U.S. at 275 - 76.  "A claim has been 'fairly presented' if the state courts

are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in

federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at

191).  In other words, the claim must have been presented in a way that is "likely to alert the

6

court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the due process clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: "(a) reli[ed] on pertinent federal cases employing constitutional analysis, (b) reli[ed] on state cases employing constitutional analysis in like fact situations, (c) assert[ed] . . . the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) alleg[ed] . . . a pattern of facts that is well within the mainstream of constitutional litigation." See Daye, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282 (citing Johnson v. Metz, 609 F.2d 1052, 1055 - 56 (2d Cir. 1979)). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 283.

Generally, a state prisoner has one year from the date his or her conviction becomes final

7

to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.**   **Petitioner's Claims**

> **1.**   ***Petitioner's claim that the trial court erred in holding that he had waived a statute of limitations defense does not present a federal constitutional issue cognizable on habeas review, and in any event it is procedurally defaulted.***

Petitioner first claims that the trial court erred in finding that he had waived a defense of untimely prosecution by failing to raise it in a written pretrial motion as previously directed by the court. Pet. 2, 5 - 6. Petitioner was charged in 2003 with both grand larceny in the first degree and grand larceny in the second degree based on acts committed between 1982 and 2002. Id. at 3; see also Resp't's Mem. Ex. 1. The New York State statute of limitations for both of these crimes is five years. Pet. 5; N.Y. Crim.Proc.Law § 30.10(2)(b). Petitioner moved orally during trial to assert this defense, arguing that application of the statute of limitations would

8

render most of the case time-barred.  T: 609 - 610.  The prosecutor responded by arguing that

because Petitioner's larceny was a continuous crime, the statute of limitations began to run on the

date the crime was completed, in 2002, and the jury should aggregate all the individual takings

during that period of continuous criminal activity.  T: 608, 611.  The trial court declined to

entertain Petitioner's oral motion, since Petitioner had disregarded the trial court's previous

request for any such motion to be made in Petitioner's pretrial omnibus motion, and stated that "a

waiver argument perhaps can be had here."  T: 610.  Petitioner contends that the trial court erred

in deeming a motion to raise a statute of limitations defense waived if not raised in a written

pretrial motion.

Petitioner raised this claim on direct appeal to the Appellate Division.  Pet. App. 9 - App.

12.  The Appellate Division denied this claim on the merits, concluding that the trial court

"properly rejected the defendant's argument that the indictment was barred by the statute of

limitations, since he failed to make a timely motion to dismiss the indictment, and in any event,

the argument was without merit."  People v. Thompson, 45 A.D.3d 876, 877 (2d Dept.

2007)(internal citations omitted).  Petitioner included this claim in his letter application seeking

leave to appeal to the Court of Appeals, Pet. App. 70, which was denied by that Court.  People v.

Thompson, 10 N.Y.3d 772 (2008).

As it is stated in the instant Petition, Petitioner's claim represents a challenge to the state

court's application of state law.  Pet. 5 - 6.  "It is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62,

67- 68 (1991).  Even if this Court were to somehow construe this claim as a violation of federal

law, Petitioner failed to apprise the state courts of the federal nature of any such claim, so it is

unexhausted.  In his appellate brief, he cites no federal case law, no state case law which applies

9

federal constitutional analysis, uses no "terms so particular as to call to mind specific constitutionally-protected rights," and does not "alleg[e] . . . a pattern of facts that is well within the mainstream of constitutional litigation." See Daye, 696 F.2d at 194.  Indeed, Petitioner cites state case law which expressly states that the statute of limitations defense "is not a nonwaivable constitutional . . .  right." Pet. App. 11 (citing People v. Dickson, 133 A.D.2d 492 (3d Dept. 1987)).  Thus, this claim was presented as purely a matter of state law to the state courts and it is therefore not cognizable under habeas review.  Additionally, even if this claim could be construed as asserting a violation of federal law, which it does not, Petitioner failed to exhaust any such supposed federal claim.[5]  Petitioner has therefore procedurally defaulted this claim. See Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005).  Petitioner has not demonstrated cause and prejudice for the default, nor that a miscarriage of justice will occur if this Court declines to consider the merits of this claim.  See id.  Thus I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

2.    ***Petitioner's claim that the trial court should have dismissed the charges against him as time-barred does not present a federal constitutional issue cognizable on habeas review, and in any event is procedurally defaulted.***

Petitioner next claims that the trial court erred in not dismissing the charges against him as time-barred, following the argument raised in Petitioner's first claim, supra.  Pet. 6.  He contends that application of the five-year statute of limitations would bar his indictment on the count of grand larceny in the first degree.  Pet. 7 - 8.

---

[5]Although Petitioner may still attack his conviction collaterally under N.Y. Crim. Proc. Law § 440.10, this issue, which is fully on the record, would not be subject to consideration on such a motion.  N.Y.Crim.Proc.Law § 440.10(2)(c).

Petitioner raised this claim on direct appeal, Pet. App. 13 - App. 18, which was summarily rejected on the merits by the Appellate Division. People v. Thompson,45 A.D.3d 876 (2d Dept. 2007)(internal citation omitted). He included this claim in his letter application to the Court of Appeals, Pet. App. 70, which was also denied. People v. Thompson, 10 N.Y.3d 772 (2008).

As with Petitioner's first claim, discussed supra, Petitioner presents this claim in his Petition as a misapplication of state law, for which federal habeas relief does not lie. Even if Petitioner's claim could be construed as a federal constitutional violation in some way, which it is not, it was not presented as a federal claim to the state courts. Thus, for the reasons stated in my evaluation of Petitioner's first claim, supra, this claim is also procedurally defaulted. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

3.    ***Petitioner's claim that the admission of the victim's conditional examination testimony violated his Confrontation Clause rights is meritless.***

Petitioner claims that the admission of Glassman's conditional examination testimony violated his Confrontation Clause right under the Sixth Amendment. Pet. 9 - 11. Petitioner construes the Supreme Court's decision in Mattox v. United States, 156 U.S. 237 (1895), to mean that the Sixth Amendment requires in-court testimony, as only in-court testimony permits a witness "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Pet 10 (quoting Mattox, 156 U.S. at 242 - 43). Petitioner also challenges the trial court's application of the state statute governing conditional examinations to the facts of his case. Pet. 10 - 11. He reasons that since Glassman was able to withstand the rigors of her conditional examination in September and October 2003, and since, according to Petitioner, the physician who testified in support of the

11

People's motion for admission of the conditional examination "could point to no new ailment that the complainant was suffering from" at the time of trial which would prevent her from testifying in April 2004, the trial court made a factual error in determining that Glassman was physically unable to testify at the time of trial.  Pet. 10 - 11.

Petitioner has exhausted this claim.  He made this argument to the Appellate Division, Pet. App. 18 - App. 21, which rejected it on the merits.  The Appellate Division held that the trial court "properly granted the People's unopposed application to take the then-95-year-old complainant's testimony at a conditional examination . . . Moreover, the Supreme Court properly admitted into evidence the videotape and transcript of the witness's testimony, including the defendant's lengthy cross-examination." People v. Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007)(internal citations omitted).  Petitioner also raised this claim in his letter application to the New York Court of Appeals, Pet. App. 70, which was denied.  People v. Thompson, 10 N.Y.3d 772 (2008).

As the state court adjudicated this claim on the merits, the appropriate standard of review is the deferential standard of 28 U.S.C. §2254(d)(1): this court may not grant relief on this claim unless the state courts' rejection of this claim was contrary to, or an unreasonable application of, clearly established Federal law, as defined by Supreme Court precedent.

The Confrontation Clause is primarily designed to ensure a defendant's opportunity to cross-examine the witnesses against him.  See Davis v. Alaska, 415 U.S. 308, 315 - 16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination"); Douglas v. Alabama, 380 U.S. 415, 418 (1965) ("a primary interest secured by [the Confrontation Clause] is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation.")  That cross-examination need not occur during trial in order to comply with the Confrontation Clause if

12

the witness is unavailable at the time of trial.  See Crawford v. Washington, 541 U.S. 36, 68 (2004)

(in order for a declarant's prior "testimonial" statements to be admissible at trial, the declarant must

be unavailable to testify and the defendant must have had the opportunity to cross-examine the

declarant at the time the statements were made[6]); see also Mattox v. United States, 156 U.S. 237,

241 (1895)(admission of transcript of now-deceased witness's testimony from prior trial did not

violate defendant's Sixth Amendment rights because he had full opportunity to cross-examine the

witness, in person, at the earlier proceeding).

The state courts' determination that admission of a conditional examination videotape and

transcript in lieu of live testimony, when the witness has become unavailable, does not violate a

defendant's rights under the Confrontation Clause is not contrary to or an unreasonable application

of the above-noted Supreme Court precedent.  In accordance with N.Y. Crim. Proc. Law § 660.20,

Petitioner cross-examined Glassman, who testified under oath, for two of the four days of her

conditional examination.  CE3: 6 - 63, CE4: 2 - 66.  The jurors viewed the videotaped testimony

and were provided with copies of the transcripts of her examination.  T: 363, 365.  Petitioner's right

to cross-examine Glassman was thus protected, as was the spirit of the Supreme Court's ruling in

Mattox, because the jury could evaluate Glassman's demeanor by watching the videotape.

Petitioner's challenge to the state court's determination that Glassman was unavailable to

testify also fails because he has not shown that it was "based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

The trial court's factual finding, based on Glassman's physician's testimony, that Glassman was

_____

[6]While the Crawford Court declined to precisely define "testimonial" statements, sworn
in-court statements, such as those made by Glassman during her conditional examination, fall
within any of the potential definitions proposed by the Court in Crawford.  See Crawford, 541
U.S. at 51 - 52.

unavailable to testify in person, is presumed to be correct under 28 U.S.C. § 2254(e)(1); in order to rebut this presumption, Petitioner must provide clear and convincing evidence of such an error. Petitioner has not met this burden. Although Petitioner asserts that the testifying physician, Dr. Judi Miller, could "point to no new ailment that the complainant was suffering from but a rehash of her medical condition which such maladies having preexisted the time of her conditional examination," Pet. 11, this is a total misstatement of the record. In fact, Dr. Miller testified that Glassman, then nearly ninety-seven, had suffered a serious medical incident requiring an emergency room visit and related hospitalization in December 2003, approximately two months after her conditional examination was taken. T: 8 - 10. According to Dr. Miller's testimony, since her hospitalization in December 2003, Glassman experienced a functional decline such that in-court testimony in April 2004 would have been "potentially . . . life threatening." T: 13 - 14. Petitioner has failed to rebut the presumption of correctness that attaches to the state court's determination of Glassman's unavailability at trial.[7]

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied as meritless.

**4.    *Petitioner's claim that the trial court erred in rejecting his <u>Batson</u> challenge is meritless.***

Petitioner claims that the trial court erred in denying his <u>Batson</u> challenge. Pet. 11. He refers the Court to his appellate brief for the substance of this argument. <u>Id.</u> Therein, Petitioner

---

[7]Petitioner also asserts that it would have been "more prudent and fair" for the trial court to have required Glassman to appear at the pre-trial hearing to determine her availability to testify at trial so that the trial court could personally judge Glassman's health. Pet. 11. This assertion does not constitute evidence to rebut the presumption of correctness of the state courts's factual findings concerning her health.

argued that the trial court erred in rejecting his <u>Batson</u> challenge to the People's peremptory challenge of Rosalyn McLawrenc, an African-American venireperson.  Pet. App. 30.  The trial court accepted the prosecutor's explanation for his peremptory challenge of McLawrenc as race-neutral; the prosecutor said that the prospective juror's accent was so thick she could not be understood, and that she "had trouble communicating."  T: 209 - 212.  However, when the prosecutor offered "the same reason" for his peremptory challenge of another African-American venireperson, Sandra Howell, the court summarily rejected it, stating only, "She is seated.  She is Alternate Number Three."  Pet. App. 29 (citing T: 306 - 307).  Petitioner contends that if a hard-to-understand accent was a pretext for a discriminatory motive in the prosecutor's peremptory challenge of Howell, it must have been a pretext for an impermissible motive in the prosecutor's challenge of McLawrenc as well.  Pet. App. 30 - App. 31.  Petitioner claims the court erred when it did not hold the prosecutor's rationale for challenging McLawrenc was also pretextual.

Petitioner has exhausted this claim.  Petitioner raised this claim on direct appeal to the Appellate Division, Pet. App. 22 - App. 31, which was denied on the merits.  <u>People v. Thompson</u>, 45 A.D.3d 876, 877 (2d Dept. 2007).  The Appellate Division concluded that "The defendant's <u>Batson</u> challenge was properly denied.  The reasons proffered by the prosecutor for the questioned peremptory challenges were race-neutral.  The defendant failed to carry his ultimate burden of demonstrating discrimination by showing that these reasons were pretextual." <u>Id.</u> (internal citations omitted).  Petitioner reiterated this argument in his application for leave to appeal to the New York Court of Appeals, Pet. App. 70, which was likewise denied.  <u>People v. Thompson</u>, 10 N.Y.3d 772 (2008).

As the Appellate Division rejected this claim on the merits, the appropriate standard of review is that of 28 U.S.C. § 2254(d): this court may not grant relief on this claim unless the

15

state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The Supreme Court has held that the use of peremptory challenges which are motivated by "purposeful racial discrimination" violates the Equal Protection Clause of the Fourteenth Amendment. Batson v. Kentucky, 476 U.S. 79, 86 (1986); see also Powers v. Ohio, 499 U.S. 400, 402 (1991) (a criminal defendant may object to race-based peremptory challenges regardless of whether the challenged veniremembers share the defendant's race). In order to determine if a prosecutor's exercise of peremptory challenges constitutes such discrimination, the Court established a three-step procedure. Batson, 476 U.S. at 96 - 98. First, the defendant must make out a prima facie case of purposeful racial discrimination by alleging facts which indicate the prosecutor made race-based peremptory challenges. Id. at 96. If the defendant has satisfied this first step, the prosecutor must then offer a race-neutral explanation for the peremptory challenges. Id. at 97. At this stage, the prosecutor's race-neutral explanation does not have to be "persuasive, or even plausible," so long as the explanation is not discriminatory on its face. Purkett v. Elem, 514 U.S. 765, 768 (1995)(citing Hernandez v. New York, 500 U.S. 352, 360 (1991)). Third, the trial court must determine whether the defendant has established purposeful racial discrimination. Batson, 476 U.S. at 98. At this final stage, the trial court may evaluate the plausibility of the prosecutor's facially race-neutral reason for the strike. See Purkett, 514 U.S. at 768.

This Court's function in reviewing Petitioner's claim is limited by Supreme Court precedent which establishes that the trial court's determination of whether a peremptory

challenge resulted from purposeful discrimination is a finding of fact, and is therefore entitled to significant deference.  See Purkett, 514 U.S. at 769 (state court finding of no racial motive behind peremptory challenges was a finding of fact entitled to a presumption of correctness on habeas review); Batson, 476 U.S. at 98 n. 21 (a trial court's determination on the question of intentional discrimination is entitled to "great deference"); Hernandez, 500 U.S. at 365 (treating discriminatory intent as a finding of fact makes "particular sense" because the trial court can best assess the credibility of the prosecutor).

Here, under 28 U.S.C. § 2254(e)(1) and the precedent cited above, this Court must presume that the trial court's finding of no racial motive behind the prosecutor's strike of McLawrenc is correct.  Petitioner bears the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Petitioner has not met this burden.  Petitioner contends that because the trial court rejected the prosecutor's explanation for striking one African-American juror, Howell, as pretextual, the prosecutor's similar explanation for striking McLawrenc must likewise have been pretextual, but this argument is not "clear and convincing" evidence that the trial court erred.[8]  Even if the prosecutor had offered the identical justification for striking both potential jurors, that justification could be credible for one but not for the other. McLawrenc's accent may have been stronger than Howell's.  Petitioner has offered no evidence to suggest that the trial court's factual conclusion in making a distinction between the two venire members was not correct.

Given the trial court's factual finding that the prosecutor's reason for striking McLawrenc

---

[8]The prosecutor's explanation for peremptorily challenging Howell was that "she was born and raised in Jamaica, she has a thick Jamaican accent and I can't understand her." T: 307. His explanation for striking McLawrenc was that she "clearly had trouble communicating, your Honor.  We had trouble understanding her." T: 210.

was not pretextual, the state courts' application of <u>Batson</u> to the facts of Petitioner's case is not contrary to or an unreasonable application of clearly established Supreme Court precedent. Therefore I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

5.    ***Petitioner's claim that the trial court's voir dire practices violated his Sixth Amendment right to an impartial jury is meritless.***

Petitioner claims that the trial court's jury selection procedure violated his Sixth Amendment right to an impartial jury, and directs the Court to his appellate brief for the substance of this claim.  Pet. 11.  On appeal, Petitioner argued that the trial court's method of jury selection by giving each party twenty minutes to conduct voir dire on a group of twenty-four potential jurors denied him his right to a fair and impartial jury.  Pet. App. 32 (citing <u>Connors v. United States</u>, 158 U.S. 408, 413 (1895)).

Petitioner has exhausted this claim.  He presented this claim to the Appellate Division, which rejected it on the grounds that the trial court "providently exercised its discretion in time-limiting the defense counsel's jury voir dire, since he was provided a fair opportunity to ask relevant and material questions." <u>People v. Thompson</u>, 45 A.D.3d 876, 877 (2d Dept. 2007)(citing N.Y. Crim.Proc.Law § 270.15(1)(c), <u>People v. Jean</u>, 75 N.Y.2d 744, 745 (1989), <u>People v. Wheeler</u>, 268 A.D.2d 448, 449 (2d Dept. 2000)).  Petitioner raised this claim in his letter application to the New York Court of Appeals, Pet. App. 70 - App. 71, which was denied. <u>People v. Thompson</u>, 10 N.Y.3d 772 (2008).

As the Appellate Division adjudicated this claim on the merits, the deferential standard of review of 28 U.S.C. § 2254(d)(1) applies: this Court cannot grant Petitioner habeas relief on this claim unless the Appellate Division's rejection of this claim was contrary to or an unreasonable

application of clearly established federal law as determined by the Supreme Court.

"A criminal defendant in a state court is guaranteed an 'impartial jury' by the Sixth Amendment as applicable to the States through the Fourteenth Amendment." Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976)(citing Duncan v. Louisiana, 391 U.S. 145 (1968)).  Principles of due process also guarantee a defendant an impartial jury.  See Irvin v. Dowd, 366 U.S. 717, 722 (1961).  The Supreme Court has accorded great deference to the "sound discretion" of the trial judge in ensuring that an impartial jury is empaneled.  See Connors v. United States, 158 U.S. 408, 413 (1895) (adequacy of voir dire is placed "of necessity" within trial court's discretion). Only jury selection procedures which are fundamentally unfair violate a criminal defendant's due process rights.  See Boyd v. LeFevre, 519 F.Supp. 629, 634 (E.D.N.Y. 1981).  A trial court's determination that a juror is impartial is a finding of fact which, on habeas review, is entitled to a presumption of correctness.  Patton v. Yount, 467 U.S. 1025, 1036 - 38 (1984).  In order for a habeas petitioner to rebut this presumption of correctness, he or she must provide "clear and convincing evidence" to that effect.  28 U.S.C. §2254(e)(1).

Petitioner cannot meet this heavy burden here.  Although Petitioner frames this claim as a violation of his right to an impartial jury, he offers no evidence that any juror was, in fact, not impartial.  Moreover, the record does not indicate that the procedures followed by the trial court were fundamentally unfair; in addition to each party's twenty-minute inquiry of the potential jurors, the trial court conducted its own preliminary inquiry with questions designed to elicit bias.  The trial court asked whether any juror had personal knowledge of the defendant or witnesses, had friends or relatives in law enforcement, had been a victim of a crime, and could participate in deliberations, among other questions.  T: 41 - 67.  The court conducted a further inquiry with any potential juror who responded in the affirmative to any of these preliminary

questions. Id. The court then ascertained whether the jurors would be able to follow her instructions on the law, again questioning any juror who hesitated individually. T: 60 - 67. The court next asked each juror, one by one, to orally answer the questions on a written questionnaire that each juror had filled out earlier, including whether or not the juror could be fair or impartial. T: 67 - 97. After this initial inquiry had been made, and instructions given, the parties proceeded with their own questions. T: 98 - 120.

Given this record, and the deference accorded to a trial court's choice of jury selection procedure, the Appellate Division's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. I therefore conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

**6.**      ***Petitioner's claim that the prosecutor's inflammatory summation violated his right to a fair trial is meritless.***

Petitioner claims that the prosecutor's summation deprived him of his Sixth Amendment right to a fair trial, and directs the Court to his appellate brief for the substance of his argument. Pet. 12. In Petitioner's appellate brief, he argued that the cumulative effect of the prosecutor's repeated characterizations of Petitioner as a liar, statement of his own opinion, and vouching for a witness deprived Petitioner of a fair trial. Pet. App. 39 - App. 43.

Petitioner exhausted this claim by raising it on direct appeal. The Appellate Division denied this claim on the merits, holding that the prosecutor's comments were "for the most part, proper," and that to the extent that they were improper, they were harmless error. People v. Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007). Petitioner included this claim in his letter application to the Court of Appeals, Pet. App. 71, which was summarily denied by that Court. People v. Thompson, 10 N.Y.3d 772 (2008).

As the Appellate Division denied this claim on the merits, the appropriate standard of review is that of 28 U.S.C. § 2254(d)(1): habeas relief may not be granted on this claim unless the Appellate Division's denial was contrary to or an unreasonable application of clearly established federal law, as established by the Supreme Court.

A prosecutor's inflammatory comments during summation only constitute constitutional error if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  This standard is a high one.  See Darden v. Wainwright, 477 U.S. 168, 179 - 183 (1986)(summation in which prosecutor repeatedly described petitioner as an "animal," "alluded to the death penalty," and stated that he wished petitioner had been killed instead of his victim did not violate petitioner's due process rights because prosecutor did not misstate evidence or implicate right to counsel or right to remain silent, evidence against petitioner was strong, and defense effectively used rebuttal to diffuse any inflammatory effect).

In order to determine whether a prosecutor's remarks have caused a petitioner substantial prejudice and thus deprived him or her of a fair trial, courts are to evaluate three factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990)(internal quotation omitted).

The Appellate Division's conclusion that some of the challenged comments were not improper, while some comments may have been better left unsaid, is in line with this Circuit's precedent.  Here, the alleged misconduct consists of approximately five instances in which the prosecutor characterized Petitioner as a liar, Pet. App. 39 - App. 40 (citing T: 791 - 92, 800, 804 - 05, 813 - 14, 819); the prosecutor's comment that "the bank records show you all he's doing is

21

spending [Glassman's money] as fast as he could get his little grubby hands on the money," Pet. App. 40 (citing T: 800); and the prosecutor's statement that he personally did not believe Petitioner's testimony that he and Glassman had a romantic relationship, Pet. App. 41 (citing T: 821).   In general, a prosecutor's characterization of a witness whose credibility is in question as a liar is not improper unless such use is "excessive" or "likely to be inflammatory."   United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987); cf. Floyd, 907 F.2d at 354 - 55 (prosecutor's characterization of petitioner as liar over forty times in summation, and statements linking his alleged lies to burden of proof, constituted excessive and inflammatory use).   The American Bar Association Criminal Justice Standard 3 - 5.8(b) (1993) states that "The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."   See also United States v. Modica, 663 F.2d 1173, 1178 - 79 (2d Cir. 1981) (recommending that all prosecutors be guided by this standard).   Here, while the prosecutor's injection of his personal belief was improper, and characterization of the defendant as a liar was perhaps ill-advised, the prosecutor did not impugn Petitioner's right to remain silent or to counsel, which militates against a finding that the misconduct was severe.

   Application of the second and third factors described in Floyd, supra, confirms that the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.   The trial court promptly admonished the prosecutor after all but one allegedly inflammatory comment, to which defense counsel did not object, in the presence of the jury, T: 791 - 92, 800, 813 - 14, 821, and instructed the jury, before summations, that it was to disregard an attorney's inadvertent injections of personal belief into summations or characterizations of a witness as a liar.   T: 782 - 83.   The trial court later reminded the jurors that they were not to consider argument in summation as evidence.   T: 857.   Thus, the trial court took

22

appropriate measures to cure any prejudice which might potentially have resulted from the prosecutor's comments. In addition, given what Petitioner describes as overwhelming evidence of his guilt, Pet. 17, Petitioner would have been convicted with or without these comments. The Appellate Division's rejection of this claim on the ground that any improper statements were, at most, harmless error, is thus not contrary to, or an unreasonable application of, clearly established Federal law.

I therefore conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

### 7.   *Petitioner's claim that the verdict sheet impermissibly shifted the burden of proof to the defense is meritless.*

Petitioner's seventh claim for habeas relief is that the verdict sheet confused the jury as to the appropriate standard of proof for the grand larceny counts because it also contained an instruction on the preliminary question of venue,[9] which must be shown by a preponderance of the evidence. Pet. 12.   During the charge conference, defense counsel objected to the following question on the verdict sheet: "Did the People prove by a preponderance of the credible evidence that the defendant committed the crime of Larceny in the First Degree in the County of Westchester, yes or no? If your answer is no cease your deliberations on Count One and proceed to Count Two." T: 778 - 79. Although the Court has not been provided with a copy of the verdict sheet in question, the trial court read aloud the final version to the jury while instructing them, which is almost identical to the version to which Petitioner objected. T: 861. Petitioner

---

[9]Glassman moved from Nassau County to Westchester County in 1996. CE1: 28. The question of venue only affected the jury's determination of the count of grand larceny in the first degree. T: 836 - 37.

contends that this phrasing could have led jurors to think that they were to apply the preponderance of the evidence standard to the question of Petitioner's guilt. Pet. 13. Petitioner claims that this confusing phrasing effectively reduced the prosecution's burden of proof on the question of his guilt from beyond a reasonable doubt to a preponderance of the evidence, in violation of Petitioner's due process rights. Pet. 13 - 14 (citing In re Winship, 397 U.S. 358 (1970)).

Petitioner has exhausted this claim by raising this argument on direct appeal. Pet. App. 44 - App. 46. The Appellate Division did not expressly address this claim, but rejected it as without merit. People v. Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007). Petitioner also included this claim in his letter application to the Court of Appeals, which was denied. Pet. App. 71; People v. Thompson, 10 N.Y.3d 772 (2008). Petitioner has thus fairly presented the factual and legal bases of this claim to the highest available state court.

As the Appellate Division rejected this claim on the merits, the appropriate standard of review is that of 28 U.S.C. § 2254(d)(1): habeas relief may not be granted on this claim unless the Appellate Division's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, as set by Supreme Court precedent.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." In re Winship, 397 U.S. 358, 364 (1970). The state court's rejection of this claim was not contrary to, or an unreasonable application of, this precedent, because the trial court repeatedly instructed the jury that the People bore the burden of proving Petitioner's guilt beyond a reasonable doubt. T: 844 - 45, 848 - 849, 853 - 56. The Court explained what proof of guilt beyond a reasonable doubt

24

meant. T: 854 - 56.  When the jury requested clarification on the issue of venue, T: 868, the

Court explained again that the People must prove geographic jurisdiction by a preponderance of

the evidence, and defined that standard of proof.  T: 871.  Petitioner's speculation that the jury

instruction on venue might have confused the jurors, thus reducing the prosecution's burden of

proof on the question of his guilt, is not tenable in the context of the instructions the trial court

gave the jury on both the question of venue and the question of guilt.

I therefore conclude, and respectfully recommend that Your Honor should conclude, that

this claim is meritless and should be denied.

### 8.   *Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on habeas review*

Petitioner's eighth claim for habeas relief is that the jury's verdict on the question of

venue was against the weight of the evidence.  Pet. 14.  It is well-settled that weight-of-the-

evidence claims are purely state law claims, and are therefore not cognizable on habeas review.

See Klosin v. Conway, 501 F.Supp.2d 429, 439 n. 2 (W.D.N.Y. 2007)(collecting cases).

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that this

claim should be denied.

### 9.   *Petitioner's ineffective assistance of trial counsel claim is unexhausted and, in the alternative, meritless.*

Petitioner claims that his trial counsel provided him with ineffective assistance in several

ways.  First, he alleges that trial counsel failed to effectively cross-examine Glassman during her

conditional examination so as to highlight any failures in memory due to her age, and by not

questioning her about the nature of their relationship, which Petitioner asserted was romantic.

Pet. 16 - 17.  Second, Petitioner alleges that trial counsel erred by not raising a meritorious

statute of limitations defense in a pretrial motion (see Claims 1 and 2, supra), with no evidence

of a "discernable defense strategy" for the omission.  Pet. 17.  Third, Petitioner alleges that trial

counsel erred in not using his own financial transaction expert to rebut the testimony of the

People's expert.  Id.  Fourth, Petitioner alleges that trial counsel erred in failing to demonstrate

that Petitioner "lacked the capacity to formulate the intent to steal," an element of the crime.  Id.

at 17 - 18.  Although Petitioner concedes that evidence of his guilt was "overwhelming," Pet. 18,

and that he had provided much of that evidence, he argues that habeas relief should nonetheless

be granted on this claim.  Id.

 Whether Petitioner exhausted this argument on direct appeal is a close question.  In his

appellate brief, Petitioner alleged the same trial counsel errors as he does in the instant Petition

in support of his claim that he was denied the effective assistance of counsel.  Pet. App. 51 -

App. 55.  He also stated that he was deprived of his "Sixth Amendment right to counsel."  Pet.

App. 51.  However, Petitioner effectively conceded that he could not meet the Supreme Court's

standard for federal ineffective assistance of counsel claims set out in Strickland v. Washington,

466 U.S. 668 (1984): as the evidence of his guilt was overwhelming, he would be unable to

demonstrate that counsel's errors had prejudiced his defense, as required by Strickland.  Pet.

App. 54.  Instead, Petitioner noted that New York State courts have not adopted the standard in

Strickland to ineffective assistance of counsel claims arising under the New York State

Constitution.  Id.  Petitioner appears to have argued, then, that even though he could not make

out a federal ineffective assistance of counsel claim, he could still succeed under the more

lenient state-law standard.  Id.  The state court, in rejecting this claim as without merit, People v.

Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007), did so summarily, citing People v. Baldi, 54

N.Y.2d 137 (1987).  Baldi applies the New York State standard for ineffective assistance of

counsel claims.  <u>People v. Baldi</u>, 54 N.Y.2d 137, 147 (1987).

In other circumstances, a petitioner's incorporation of a phrase such as "the Sixth Amendment" in a claim raised on direct appeal suffices to alert the state court to the federal nature of that claim.  <u>See</u> <u>Klein</u>, 667 F.2d at 282.  In this situation, however, where Petitioner essentially conceded that he would be unable to make out an ineffective assistance of counsel claim under the federal standard, and focused instead on the application of the state ineffective assistance of counsel standard to his attorney's performance, I conclude that he did not fairly present the federal nature of his claim to the state courts.  Thus, I conclude that Petitioner has not exhausted any federal ineffective assistance of trial counsel claim.  Because Petitioner has no remaining state law remedy for a federal ineffective assistance of trial counsel claim which is a matter of record in the trial court,[10] he has procedurally defaulted this claim.  <u>See</u> <u>Smith v. Duncan</u>, 411 F.3d 340, 347 (2d Cir. 2005).   As he has not demonstrated cause or prejudice for the default, nor that a miscarriage of justice will occur if this Court declines to consider the merits of this claim, <u>see</u> <u>id.</u>, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's ineffective assistance of trial counsel claim should be denied.

Even if Petitioner had exhausted this claim, which he did not, I would still recommend its denial on the merits.  As the Appellate Division dismissed Petitioner's ineffective assistance of counsel claims on the merits, the appropriate standard of review is highly deferential.  28 U.S.C. § 2254(d)(1).  Habeas relief would only be available if the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, as defined by the Supreme Court.  As the Appellate Division's denial of this claim is not contrary to, or an

---

[10]<u>See</u> footnote 5, <u>supra</u>.

27

unreasonable application of, Supreme Court precedent, even if Your Honor concluded that Petitioner has exhausted this claim, I would recommend its denial on the merits.

The Supreme Court's standard for ineffective assistance of counsel claims set out in Strickland v. Washington, 466 U.S. 668 (1984), has two prongs. First, counsel's performance must have been so deficient that it fell below an objective standard of reasonableness, as reflected in prevailing standards of professional conduct. Id. at 688 - 89. Courts must be "highly deferential" in reviewing counsel's performance; it is the defendant's burden to rebut the presumption that alleged errors "might be considered sound trial strategy." Id. at 689 (internal quotation omitted). Second, counsel's errors must have prejudiced the defense. Id. at 687. To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

First, Petitioner claims his trial counsel was ineffective for failing to demonstrate, through cross-examination during Glassman's conditional examination, problems with Glassman's credibility. Pet. 16 - 17. Petitioner alleges that counsel should have sought to discredit Glassman's memory, and explored the supposedly romantic nature of their relationship to show Glassman's "bias or motive to fabricate" as a "jilted lover." Id. at 17. In fact, counsel did inquire on cross-examination of Glassman about the social aspects of their relationship, see CE3: 31, 41 - 42, but Glassman consistently described the relationship as a platonic friendship. CE3: 31 - 32, 42: 2 - 4. Moreover, "decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). The realistic concerns about

28

potentially alienating a jury by aggressively cross-examining an elderly woman like Glassman is just one obvious strategic consideration which counsel may reasonably have taken into account. Petitioner has not rebutted the presumption that his counsel was pursuing a valid trial strategy in not discrediting Glassman's memory or questioning her further on the nature of their relationship.  Petitioner has also not established that prejudice resulted from counsel's failure to make these inquiries; given the "overwhelming" evidence of his guilt, Pet. 18, Petitioner has not shown that, but for counsel's alleged deficiency, the outcome of the trial would have been different.  Thus, even if Petitioner had exhausted this claim, I would recommend its denial, as the Appellate Division's rejection of this claim is not contrary to, or an unreasonable application of, <u>Strickland</u>.

Second, Petitioner asserts that trial counsel was ineffective for failing to include a statute of limitations defense in his written pretrial motion. Pet. 17.   If the statute of limitations did apply to Petitioner's indictment, "the result of the proceeding would have been different," <u>Strickland</u>, 466 U.S. at 694, as there exists a reasonable probability that application of the statute of limitations would have precluded Petitioner's conviction for grand larceny in the first degree.[11] Petitioner was indicted for a scheme of grand larceny which began in 1982, but grand larceny in the first and second degrees both have five year statutes of limitations. Pet. App. 9 (citing N.Y.Crim.Proc.Law § 30.10).  The trial court refused to consider Petitioner's untimely statute of limitations claim when counsel attempted to raise it at trial, because counsel had waived it by not

---

[11]Grand larceny in the first degree (N.Y. Penal Law § 155.42) requires proof of stealing property with a value exceeding one million dollars.  If the statute of limitations applied, thus prohibiting the jury from considering the loss which occurred prior to June 10, 1998 (five years prior to the date on which the indictment was filed), the loss amount would have been in the realm of $705,600, which would have been grand larceny in the second degree, in violation of N.Y. Penal Law § 155.40.

including it, as instructed, in his written pretrial omnibus motion.  T: 609 - 610, 659.  As Petitioner argues herein, the application of this defense would mean that he could only be charged with thefts which occurred after 1998, five years prior to the indictment.  Pet. 7.  Grand larceny in the first degree applies to theft of greater than $1 million.  N.Y. Penal Law § 155.42.  Grand larceny in the second degree applies to theft of greater than $50,000.  N.Y. Penal Law § 155.40(1).  If the five-year statute of limitations period had applied to Petitioner's thefts, he could not have stolen over $1 million, so could not have been convicted of grand larceny in the first degree.  Pet. 8.

However, Petitioner has failed to demonstrate that a motion by counsel to dismiss the indictment on the ground of untimely prosecution in the manner directed by the court would have been successful.  That is, Petitioner has not established that his attorney's performance, even if deficient, was prejudicial to the outcome of the case.  Petitioner was charged with committing larceny by a common scheme or plan which began in 1982 and terminated in 2002, Resp't's Mem. Ex. 1, and the jury was instructed that individual takings could be aggregated as long as they were all committed as part of a "general fraudulent scheme or plan," motivated by a "single sustained criminal intent."  T: 841.  Under New York State law, when a defendant is charged with committing a continuing offense, as Petitioner was here, the statute of limitations begins to run on the date the crime ends.  See People v. Randall-Whitaker, 55 A.D.3d 931 (2d Dept. 2008); People v. DeLong, 206 A.D.2d 914, 915 (4th Dept. 1994); People v. Rosich, 170 A.D.2d 703, 703 - 04 (2d Dept. 1991).  Petitioner's crime ended in 2002, and he was indicted in 2003, so the indictment was not time-barred if Petitioner's crime was a continuing offense.  Petitioner's attorney would only have been successful in arguing that the indictment was time-barred, then, if he could have successfully challenged the continuing offense theory.

30

The Appellate Division's rejection of such a challenge on the merits on direct appeal, see People v. Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007), confirms that such a motion would not have been successful. Thus, Petitioner has failed to establish that counsel's failure to timely make such a motion prejudiced his defense, and the state court's decision rejecting this allegation of ineffective assistance of counsel is not contrary to or an unreasonable application of Strickland.

Third, Petitioner alleges that trial counsel provided ineffective assistance in not using his own financial transaction expert to rebut the testimony of the People's expert. Pet. 17. Petitioner has failed to establish that the omission–assuming that such a rebuttal expert exists–was not the result of trial strategy, or that the introduction of any such expert testimony would have affected the outcome of the trial. See United States v. Best, 219 F.3d 192, 201 - 02 (2d Cir. 2000)(deciding what witnesses to call is normally a matter of trial strategy and is therefore ordinarily not grounds for a claim of ineffective assistance). The evidence adduced at Petitioner's trial included Glassman's testimony, see T: 363, 365, and Petitioner's own inculpatory statements, see Pet. 18. Given the concededly "overwhelming" evidence against Petitioner, Pet. 18, Petitioner has failed to establish by a reasonable probability that, but for counsel's failure to produce an unidentified rebuttal expert, the outcome of his trial would have been different. The state court decision rejecting this claim was thus not contrary to or an unreasonable application of clearly established Supreme Court law.

Fourth, Petitioner alleges that trial counsel was ineffective by failing to demonstrate that Petitioner "lacked the capacity to formulate the intent to steal," an element of the crime. Pet. 18. Petitioner did not explain either in his appellate brief or in the instant Petition how counsel could have established this lack of capacity, see id., Pet. App. 53, or rebut the presumption that counsel's failure to pursue this trial strategy was not, itself, a strategic decision. Petitioner has

therefore failed to establish that his attorney's performance in this respect was deficient.  The state court's rejection of this claim is thus not contrary to, or an unreasonable application of, clearly established federal law.

Thus I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's ineffective assistance of trial counsel claim should be denied as unexhausted and procedurally defaulted, and, in any event, as meritless.

### 10.     *Petitioner's claim that he was denied the effective assistance of counsel at sentencing is meritless.*

For his tenth claim, Petitioner asserts that the trial court denied him the effective assistance of counsel and his right to due process at sentencing by denying his retained attorney's second motion for an adjournment.  Pet. 19 - 20.  Petitioner alleges that he was therefore represented at sentencing by an attorney who was unprepared to advocate on his behalf.  Id. Petitioner contends that, had his attorney been better prepared at sentencing, his attorney would have argued that Petitioner's "age and developing health concerns" merited a lesser sentence. Pet. 22.

Although Petitioner claimed, on direct appeal, that he had been denied effective assistance of counsel at sentencing due to the trial court's denial of Steinhauser's motion for another adjournment, Pet. App. 56 - App. 59, he did not raise the argument that his counsel was ineffective for failing to argue that his sentence should have been reduced due to his age and health concerns.  Petitioner thus failed to fairly present the factual and legal basis of his claim to the state courts.  See Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).  Therefore, to the extent that Petitioner now alleges his sentencing counsel was ineffective for failing to raise this argument, this claim is unexhausted.  Petitioner might still be able to raise this particular

ineffective assistance claim via a state court collateral attack under New York Crim. Proc. Law §§ 440.10 et seq., depending on whether the state court would consider this claim to be an on- or off-the-record claim, <u>see</u> N.Y. Crim.Proc.Law § 440.10(2)(c), so I cannot deem this claim exhausted and procedurally defaulted. <u>See</u> 28 U.S.C. § 2254(c).

When confronted with a habeas petition which contains exhausted and unexhausted claims, a court has discretion to dismiss the petition in its entirety, stay the exhausted claims to permit the petitioner to exhaust the unexhausted claims in state court, or deny the petition on the merits. <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 277 - 79 (2005); <u>see</u> <u>also</u> 28 U.S.C. § 2254(b)(2). In order to obtain a stay of the exhausted claims, a petitioner must show that his or her unexhausted claims are "potentially meritorious," that he or she had good cause for failing to exhaust those claims before bringing them to federal court, and that he or she has not engaged in "intentionally dilatory litigation tactics." <u>Rhines</u>, 544 U.S. at 278. Petitioner has not sought such a stay, nor has he made the requisite showing to obtain one. However, as "dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief," I instead delete the claim that Petitioner's attorney at sentencing was ineffective for failing to emphasize Petitioner's age and infirmity from the instant petition. <u>See</u> <u>id.</u> (". . .if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.").

To the extent that Petitioner also seeks to raise the version of his ineffective assistance of sentencing counsel claim which was previously raised on direct appeal, that claim is exhausted. On direct appeal, Petitioner contended that Steinhauser was ineffective simply because he did

not have access to the trial attorney's files before representing Petitioner at sentencing.  Pet. App.

56 - App. 59.   As the Appellate Division denied that claim on the merits, see People v.

Thompson, 45 A.D.3d 876, 877 (2d Dept. 2007), I must apply the standard of review set by 28

U.S.C. § 2254(d).  That is, Petitioner may only be granted relief on this claim if the state court's

adjudication of this claim was contrary to, or an unreasonable application of, clearly established

Federal law, as defined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

As stated supra, the Supreme Court's standard for ineffective assistance of counsel claims

set out in Strickland v. Washington, 466 U.S. 668 (1984), has two prongs: first, counsel's

performance must have been so deficient that counsel was not functioning as "counsel" at all,

and second, that deficiency must have prejudiced the defense.  466 U.S. at 687.  A longer

sentence can qualify as such prejudice.  Glover v. United States, 531 U.S. 198, 204 (2001).

The Appellate Division's summary rejection of Petitioner's ineffective assistance of

sentencing counsel claim is not contrary to or an unreasonable application of this standard.  In

his appellate brief, Petitioner simply argued that because Steinhauser had not seen the trial

attorney's files prior to sentencing, he must have provided ineffective assistance.  Pet. App. 57.

He did not explain how access to those files would have enabled Steinhauser to obtain a lesser

sentence.  Steinhauser did have the opportunity to meet with Petitioner, as well as to review the

presentence report, prior to sentencing.  S2: 2, 5.  Steinhauser made a substantive argument at

sentencing, namely that the prosecution's description of Petitioner's relationship with Glassman

was inaccurate and incomplete.  S2: 14 - 15.  Petitioner then made a lengthy statement as to his

version of events.  S2: 15 - 30.  Because Petitioner failed to identify any deficiency in his

counsel's performance, or how that deficiency increased his sentence, on direct appeal, the state

court's decision did not unreasonably apply the Supreme Court standard for ineffective

assistance of counsel.  I therefore conclude, and respectfully recommend that Your Honor should

conclude, that Petitioner's ineffective assistance of sentencing counsel claim should be denied.

### III. CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor

should conclude, that this Petition should be dismissed in its entirety.

### IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties

shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file

written objections to this Report and Recommendation.  Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable

Vincent Briccetti, at the United States District Court, Southern District of New York, United

States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers

of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: March  11, 2013
       White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
United States Magistrate Judge
Southern District of New York

35

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Vincent Briccetti, U.S.D.J.

Samuel Gregory
Samuel Gregory P.C
45 Main Street
Brooklyn, NY 11201

John J. Sergi
Westchester County District Attorney's Office
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601